CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
DANIEL M. PASTOR (CABN 297948)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Facsimile: (415) 436-7234
    daniel.kassabian@usdoj.gov
    daniel.pastor@usdoj.gov

Attorneys for United States of America

**FILED**
**Dec 18 2025**
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:25-CR-00421-JSC |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
| v. | |
| WEIJIE ZHU, | |
| Defendant. | |

# TABLE OF CONTENTS

Page

I. SYNOPSIS ...................................................................................................................1

II. LEGAL STANDARDS ................................................................................................2

    A. Whether The Court Should Hold A Detention Hearing........................................2

    B. Whether The Court Should Detain The Defendant After A Hearing ...................3

II. THE DEFENDANT PRESENTS A SERIOUS RISK OF FLIGHT ..............................4

    A. Incentives To Flee: Weight Of The Evidence And Potential Punishment...........4

        1. Evidence of defendant Zhu's participation in the charged crimes..........5

        2. The defendant's potential punishment ....................................................5

    B. Ability To Flee: Access To Resources That Would Enable Flight.......................6

    C. Ties To The Jurisdiction And The United States..................................................7

    D. Reliability And Trustworthiness Of The Defendant..............................................7

IV. THE DEFENDANT IS A DANGER TO THE COMMUNITY ....................................8

V. THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION .............9

VI. CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Zaragoza*, No. 3:08-CR-0083-PJH,
  2008 WL 686825 (N.D. Cal. Mar. 11, 2008) ........................................................................... 6
*United States v. Kakkar*, No. 5:13-CR-00736-EJD,
  2017 WL 4163291 (N.D. Cal. Sept. 20, 2017) ....................................................................... 9
*UnitedStates v. White*, No. 4:18-CR-00025-YGR,
  2018 WL 5291989 (N.D. Cal. Oct. 19, 2018) ........................................................................ 2
*United States v. Posey*, No. 18-CR-00408-CRB,
  2020 WL 2838793 (N.D. Cal. June 1, 2020) ......................................................................... 9
*United States v. Erazo-Calix*, No. 1:24-CR-00150-AKB,
  2024 WL 4505038 (D. Idaho Oct. 16, 2024) ......................................................................... 3
*UnitedStates v. Nguyen*, No. 3:24-MJ-71474-MAG (LB),
  2024 WL 4584574 (N.D. Cal. Oct. 25, 2024) ........................................................................ 2
*United States v. Diaz-Hernandez*,
  943 F.3d 1196 (9th Cir. 2019) ................................................................................................ 4
*United States v. Figueroa-Alvarez*,
  681 F. Supp. 3d 1131 (D. Idaho 2023) .................................................................................. 3
*United States v. Gebro*,
  948 F.2d 1118 (9th Cir. 1991) ................................................................................................ 9
*United States v. Lindsey*,
  680 F. App'x 563 (9th Cir. 2017) ........................................................................................... 9
*United States v. Motamedi*,
  767 F.2d 1403 (9th Cir. 1985) ............................................................................................ 3, 4
*United States v. Powers*,
  318 F. Supp. 2d 339 (W.D. Va. 2004) ................................................................................... 2
*United States v. Reynolds*,
  956 F.2d 192 (9th Cir. 1992) .................................................................................................. 9
*United States v. Santos-Flores*,
  794 F.3d 1088 (9th Cir. 2015) ............................................................................................ 3, 4
*United States v. Singleton*,
  182 F.3d 7 (D.C. Cir. 1999) .................................................................................................... 2
*United States v. Spirea*,
  No. 3:24-CR-00383-2-AN, 2024 WL 4903759 (D. Or. Nov. 27, 2024) ............................ 3, 8
*United States v. Winsor*,
  785 F.2d 755 (9th Cir. 1986) .................................................................................................. 4

**Statutes**

18 U.S.C. § 1343 ............................................................................................................................ 5
18 U.S.C. § 1349 ............................................................................................................................ 5
18 U.S.C. § 3141 ............................................................................................................................ 8
18 U.S.C. § 3142(e) ............................................................................................................. 1, 2, 3, 8
18 U.S.C. § 3142(f) ............................................................................................................. 1, 2, 3, 4
18 U.S.C. § 3142(g) ....................................................................................................................... 4

**I.    SYNOPSIS**

On December 18, 2025, defendant Weijie Zhu was arrested for elder fraud.  Since at least November 2023, he has been a money mule, picking up $10,000 or more in cash at a time from more than a dozen elderly victims, who have been scammed into believing they needed to give that money to him.  When defendant Zhu was interview by federal agents after being arrested, he lied.  He denied any knowledge of the elder fraud scheme in which he participated.  This was the second time he lied and denied any involvement in elder fraud.  The first was in April 2025, when he was interviewed by Concord police about an elder fraud cash pick-up.  He denied even being at the victims' home where that pickup occurred, even though the victims took a photo of him getting the cash from them.

A search of defendant Zhu's home in Oakland on the day of his arrest revealed other criminal conduct.  He had a fake California Driver License.  The basement was rigged to operate as an unlawful indoor marijuana grow—although no plants had been set up at that time.  Moreover, he had two firearms in bedroom: a modified air rifle, and a semi-automatic pistol.  And, he had multiple pre-loaded magazines near the pistol.

Defendant Zhu is a 27 year-old Chinese national who has been a lawful permanent resident in the United States since 2017, when he arrived with his parents.  He owns his home in Oakland but has no job to pay for it.  He told federal agents that the money for it came from China.  Per travel records, he traveled to Taiwan twice in 2024, and to Mexico in 2018.

The Court must now determine whether a detention hearing is warranted because there is a "a serious risk that such person [i.e., the defendant] will flee." 18 U.S.C. § 3142(f)(2)(B).  If it holds a hearing, the Court must then determine whether defendant Zhu should be detained because "no condition or combination of conditions will reasonably assure the appearance of the person [i.e., the defendant] as required and the safety of any other person and the community."  *Id*. § 3142(e)(1).

The government submits that defendant Zhu's conduct and the circumstances show that he is a serious flight risk and warrant a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(B).  As to whether to detain defendant Zhu, his contacts with the United States must be juxtaposed with his charged unlawful conduct with multiple victims, false identity document, and lying to police.  The Court should detain defendant Zhu pending trial because he is a serious risk of flight and a danger to the community.

## II. LEGAL STANDARDS

### A. Whether The Court Should Hold A Detention Hearing

Defendant Zhu does not face charges that entitle the government to a detention hearing pursuant to 18 U.S.C. § 3142(f)(1). Thus, the government moves for such a hearing pursuant to 18 U.S.C. § 3142(f)(2)(A) because there is a serious risk that defendant Zhu will flee.

Some courts, including those in the Northern District of California, have suggested a low threshold in triggering a detention hearing. "Because of the immediacy with which the hearing should happen, the government or Court need only express their belief, or provide a minimal factual basis, that the defendant poses a serious risk of flight for the hearing to commence." *United States v. White*, No. 4:18-CR-00025-YGR, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018) (following *United States v. Powers*, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004)); *United States v. Nguyen*, No. 3:24-MJ-71474-MAG (LB), 2024 WL 4584574, at *7 (N.D. Cal. Oct. 25, 2024) ("Here, the government did more than express its belief, and it did not overplay the issues about possible flight risk: . . . [it provided] a fuller description of erratic and concerning behavior in this and other districts . . . that gave rise to a substantial concern about volatility, amenability to supervision, and a resulting concern about a serious risk of flight. That gets the government its detention hearing under 18 U.S.C. § 3142(f)(2) based on a serious risk of flight.") This is consistent with the mere nature of a filed charge—based on a probable cause determination by a grand jury or court officer—as being sufficient to warrant a detention hearing pursuant to § 3142(f)(1). *Compare United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999) ("The decision whether to hold a [detention] hearing occurs based on even less information than a decision to detain or release: a detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish.") The government asserts that a low threshold akin to probable cause is appropriate.

Some district courts in the Ninth Circuit outside California have held otherwise:

> The Government must demonstrate serious risk of flight by a preponderance of the evidence to trigger a detention hearing under § 3142(f)(2)(A). [citations omitted] More finely put, this means that the Government must demonstrate that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee.

*United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023); *accord United States v. Erazo-Calix*, No. 1:24-CR-00150-AKB, 2024 WL 4505038, at *3 (D. Idaho Oct. 16, 2024) ("This Court, however, declines to disturb the *Figueroa-Alvarez* analysis [that] identifies the appropriate standard for determining a risk of flight as a preponderance of the evidence."); *United States v. Spirea*, No. 3:24-CR-00383-2-AN, 2024 WL 4903759, at *4 (D. Or. Nov. 27, 2024) (adopting the analysis in *Figueroa-Alvarez*).

The more recent cases, following the reasoning of *Figueroa-Alvarez*, have also delineated the factors a court may consider in determining whether the defendant presented a serious *risk* of flight pursuant to 18 U.S.C. § 3142(f)(2)(B) to warrant a detention hearing. After distinguishing risk of flight from risk of non-appearance, the court in *Figueroa-Alvarez* analyzed four categorical factors that "relate to serious risk of flight," and then delineated the types of information within each factor that it evaluated in that specific case as the related to the defendant in that case:

(i) incentives to flee, including weight of the evidence and potential punishment;

(ii) ability to flee—i.e., defendant's access to resources that would enable flight;

(iii) ties to the jurisdiction and the United States, including length of residence, family ties; and

(iv) reliability and trustworthiness of the defendant, including any illegal reentry after removal, prior violations of terms of supervised release/probation/parole, prior failures to appear, and substance abuse.

*See Figueroa-Alvarez*, 681 F. Supp. 3d at 1136-45. The court considered "these factors as part of the 'totality of the evidence.' [citation]. No one factor is dispositive." *Id*. at 1136 (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015)).

**B.      Whether The Court Should Detain The Defendant After A Hearing**

The Bail Reform Act permits pretrial detention of a defendant where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id*. A finding that a defendant is a danger to the

community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*. Consideration of factors outside those articulated in section 3142 is also disfavored. *Id*. "Alienage may be taken into account, but it is not dispositive." *Santos-Flores*, 794 F.3d at 1090; *see also Motamedi*, 767 F.2d at 1408 ("the factor of alienage . . . may be taken into account, but it does not point conclusively to a determination that [the defendant] poses a serious risk of flight.").

Ultimately, the four factors to determine whether to detain pretrial are: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II. THE DEFENDANT PRESENTS A SERIOUS RISK OF FLIGHT

The Court should hold a detention hearing for defendant Zhu given the totality of circumstances as discussed below, with defendant Zhu maintaining his Chinese citizenship and his recent trips to Taiwan placing this issue beyond reasonable dispute.

### A. Incentives To Flee: Weight Of The Evidence And Potential Punishment

The Indictment articulates defendant Zhu's involvement in an elder fraud scheme that has cost vulnerable victims millions of dollars in losses—for some, their life savings. As described in the Indictment, defendant Zhu's co-conspirators targeted victims, who were typically elderly, by using computer programs with misrepresentations, such as those designed to convince the victims that they were hacked or in danger of being hacked, they were under investigation by government officials for wrongdoing, or they had mistakenly been transferred funds from a third party. Those computer programs convinced the victims to call the co-conspirators by telephone—or the co-conspirators called

the victims—and the co-conspirators then communicated with the victims through telephone calls and/or electronic communications. In those communications, the co-conspirators used false pretenses and false names to convince the victims that the co-conspirators were aiding the victims to address the issue on the victims' computer and/or an issue with the victims' finances, where the false pretenses included that the co-conspirators worked with law enforcement, other government authorities, or a business affiliated with the misrepresentation. The co-conspirators used the false pretenses to manipulate the victims to withdraw the victims' money from bank accounts and deliver those funds, either as currency or a valuable commodity such as gold bullion, in person to defendant Zhu or others who picked up the cash or commodity from the victims. Defendant Zhu and the others picking up the cash would have a false alias and/or codeword to confirm their identity as the person who should be getting the victim's funds.

Defendant Zhu, in particular, has done this many times. The Indictment sets forth four instances, but the investigation has confirmed a dozen with additional ones still being verified. Among other things, the investigation includes information from Google LLC about residential addresses defendant Zhu has searched and mapped out. There are dozens of seemingly random residential addresses that, like those of the identified victims, could be instances where defendant Zhu engaged in a cash pickup.

### 1. Evidence of defendant Zhu's participation in the charged crimes

Defendant Zhu was photographed by Victims 1 and 2 in the Indictment at the time he picked-up the cash from them. While the other victims in the indictment did not identify defendant Zhu, information from Google LLC or his iPhone—seized from an earlier arrest on April 5, 2025—put him at the victims' homes or the designated spot when the cash pickup occurred. The victims' information, and the passcodes conveyed to them, were also found on defendant Zhu's iPhone.

### 2. The defendant's potential punishment

If convicted, defendant Zhu faces a maximum statutory sentence of 20 years in prison and a $250,000 fine or twice the victims' losses for violations of 18 U.S.C. §§ 1343 (wire fraud) and 1349 (wire fraud conspiracy). The government estimates defendant Zhu's guidelines range to be 87-108 months imprisonment based on a total offense level of 29 (including a 3-level reduction for acceptance of responsibility) and a Criminal History Category of I. The guidelines are significant because:

- Defendant Zhu is part of a fraud conspiracy that resulted in more than $550,000 in losses—the

government believes that restitution is likely to be over one million dollars;

- Defendant Zhu's cash pick-ups were from 10 or more victims, and/or resulted in substantial financial hardship to one or more victims;
- Defendant Zhu's conduct involved taking the cash from the person of another;
- Defendant Zhu is part of a fraud conspiracy in which there was a misrepresentation that he was acting on behalf of the government in collecting the cash; and
- Defendant Zhu's conduct has resulted in a large number of victims.

While Defendant Zhu might argue that guidelines sentences are rare in this District, the facts supporting the above enhancements make a guidelines sentence more likely if not compel one.

### B. Ability To Flee: Access To Resources That Would Enable Flight

Defendant Zhu is a Chinese national. Defendant Zhu came to the United States in 2017 with his parents from Shanghai, China and obtained lawful permanent resident status. But, since his arrival, he has travelled to Taipei, Taiwan twice last year: November 9-15, 2024; and August 29-September 3, 2024. Before that, he traveled to Mexico City, Mexico, during August 30-September 6, 2018.

While his exact current ties to his home country are unknown, China does not extradite to the United States. Moreover, as evidenced by the flight in other cases involving foreign citizens, retaining defendant Zhu's passport is not a significant obstacle to flight. A Chinese national can, for example, exit the southern border and then obtain new travel documents in Mexico to return to China. In this instance, defendant Zhu also was found with a false California Driver License. So, he has the ability to obtain false documents that could enable flight and avoid apprehension while fleeing. *Accord United States v. Zaragoza*, No. 3:08-CR-0083-PJH, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) (finding that the defendant's "use of false identification" in part, supported detention based on flight risk).

The risk of flight of a foreign national is a serious one—and not just hyperbole or hypothetical. Just last month, a foreign national fled back to China, through Mexico, immediately upon release in Case No. 3:25-CR-00259-WHO. At the other end of the spectrum—at least as to when the flight occurred—another foreign national fled to Mexico at the beginning of this year—after two years of being on pretrial release and having another person agree to an unsecured bond, but immediately following his conviction at jury trial, in Case No. 5:23-CR-00101-EJD.

### C. Ties To The Jurisdiction And The United States

Defendant Zhu's ties to the United States appear to be minimal. He is not married and does not have children. His parents with whom he arrived in the United States might be his only close family. He owns the home in Oakland where he resides, but he has no employment. When interviewed by federal agents following his arrest yesterday, he stated that the money for that home came from China. So, if anything, this tends to show he has financial resources to live in China should he flee there.

### D. Reliability And Trustworthiness Of The Defendant

Defendant Zhu has no prior criminal court cases from which this Court may draw any inference on how he would perform on pretrial release. What the Court does have before it is someone engaged in a massive fraud scheme that makes defendant Zhu inherently untrustworthy. Moreover, defendant Zhu has lied twice to investigators when agreeing to be interviewed. On April 5, 2025, he was arrested pursuant to a *Ramey* warrant (i.e., a California arrest warrant without a corresponding criminal prosecution) and thereafter interviewed by a Concord Police Department detective, after receiving Miranda admonishments, with the aid of a Cantonese translator. Defendant Zhu engaged in bald face lies, claiming he never went to Concord, so he never could have met the fraud victims there (now Victim 1 and Victim 2 in the Indictment)—even though the detective informed defendant Zhu that those victims in Concord took photographs of him as he picked up the cash from them on January 30, 2025.

Then when arrested by federal agents yesterday, defendant Zhu again lied about his involvement in this fraud scheme. And, when confronted this time around with the actual photos taken by Victim 1 and Victim 2 on January 30, 2025, defendant Zhu stated he did not know what was in the box that had the cash the victims gave him. That was an obvious lie because, among other things, defendant Zhu's iPhone seized during his April 5 arrest had a video of him opening a package with cash from another victim—i.e., he knew exactly what he was picking up from these elderly persons, time and again.

Finally, per information gathered during the investigation into defendant Zhu's conduct, it appears that he continued to visit various residential homes, after his arrest on April 5, 2025, including ones that the government has identified as occupied by elderly persons. While the government's investigation into his interactions at these various locations continues, there is reason to believe that defendant Zhu continued to engage in cash pickups from elderly fraud victims, undeterred by his arrest.

## IV. THE DEFENDANT IS A DANGER TO THE COMMUNITY

"[T]he Bail Reform Act (18 U.S.C. §§ 3141, et seq.) authorizes the detention of individuals as a danger to the community under 18 U.S.C. §§ 3142(e) and (g) even if the Court held the detention hearing solely on the ground that the individual presents a serious risk of flight under 18 U.S.C. § 3142(f)(2)." *Spirea*, 2024 WL 4903759, at *1. That is, "once a detention hearing is authorized, courts must evaluate both the defendant's risk of nonappearance *and* risk of danger to the community regardless of whether the detention hearing was triggered by (f)(1) or (f)(2)." *Id*. at *8 (noting holding was consistent with "other district courts in the Ninth Circuit").

Defendant Zhu's home was searched yesterday, revealing other unlawful and/or dangerous conduct per the photos below:

 

The photo on the left shows the basement of defendant Zhu's home, with fans, wiring, and floor/wall linings consistent with setting up an indoor marijuana grow in a residential home, which is unlawful.

Some processed marijuana recovered on scene also is shown in the photo. On the left is a photo of a rifle found in defendant Zhu's bedroom, with a scope and stabilizing arms in the front. A semiautomatic pistol and two loaded magazines were found on his bedside table. Also found in his room was the fake California Driver License mentioned above.

Of course, the above findings were all in addition to the danger that defendant Zhu continues to engage in the charged offense conduct that harms vulnerable members of this community. Danger to the community under the Bail Reform Act also includes economic harm. *See United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992); *see also United States v. Posey*, No. 18-CR-00408-CRB, 2020 WL 2838793, at *1 (N.D. Cal. June 1, 2020) ("economic danger may be a reason to deny pretrial release"); *United States v. Kakkar*, No. 5:13-CR-00736-EJD, 2017 WL 4163291, at *2 (N.D. Cal. Sept. 20, 2017) ("The court therefore concludes that Defendant will continue to constitute an economic danger to the community if permitted release."). In *United States v. Lindsey*, 680 F. App'x 563 (9th Cir. 2017), the defendant "targeted vulnerable and impoverished individuals," used stolen identities, and "profited" while his victims "were left with ruined credit." *Id*. at 567-68. The Ninth Circuit held that the defendant "is a danger to individuals and the community" and affirmed the denial of bail. *Id*. at 568.

## V.     THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

The government has made a showing that defendant Zhu should be detained. Even if he demonstrates some ties to the community, they do not overcome the other factors in favor of detention based on the information before the Court. Evidence of his guilt and likely period of federal imprisonment "makes it more likely that he will flee. . . ." *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration).

Defendant's Chinese citizenship means he can choose to flee back to China at any time—any restraints the Court can impose short of detention require a level of voluntary compliance with supervision. And his pattern of deceitful conduct does not provide a basis for the Court to trust him to stay, either upon initial release, but also upon a future time where defendant Zhu faces imminent conviction and sentencing given the strength of the government's case. Per what was found in his home,

defendant Zhu also presents a danger to the community.  And that is in addition to the offense conduct, which he could continue with ease if released.

## VI. CONCLUSION

For the foregoing reasons, the Court should detain defendant Zhu pending trial, or at least have a full detention hearing to determine additional facts that defense might present in rebuttal.

DATED:  December 18, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
DANIEL N. KASSABIAN
Assistant United States Attorney